**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUL 19 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) CRIMINAL NO. 12-30220-DRH | |
| v. ) | |
| ) Title 18, United States Code, Section 1347 | |
| VIWATHNA BHUTHIMETHEE, ) Title 21, United States Code, | |
| ) Sections 841(a)(1), (b)(1)(E)(i) and (b)(2) | |
| Defendant. ) | |
| ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT 1
### Healthcare Fraud

1. **VIWATHNA BHUTHIMETHEE** is a licensed physician in the State of Illinois.

2. **VIWATHNA BHUTHIMETHEE** was licensed to prescribe controlled substances in the State of Illinois until July 13, 2010, when he voluntarily surrendered his DEA Registration to the Drug Enforcement Administration.

3. **VIWATHNA BHUTHIMETHEE** operated the Walk In Clinic, located at 654 East Broadway Street in Alton, Illinois. **BHUTHIMETHEE** was the sole person licensed to provide healthcare at his Walk In Clinic. The only other person working at the Walk In Clinic was his spouse, who was not a licensed healthcare professional.

4. **VIWATHNA BHUTHIMETHEE** was known in Madison County and elsewhere to be a physician who prescribed drugs on request. For most patients, **BHUTHIMETHEE** did not operate a legitimate medical practice, but instead was engaged in a scheme to distribute and dispense controlled substances illegally, thereby defrauding Health Care Benefit Programs and

1

patients of money by running what was, in essence, a prescription service for drug addicts, commonly known as a "Pill Mill."

5. While **VIWATHNA BHUTHIMETHEE** operated a Pill Mill instead of a legitimate medical practice, numerous patients were hospitalized due to drug overdoses, and several patients died of drug overdoses. From December 2006, **BHUTHIMETHEE** was on notice of patient drug overdose deaths, yet the defendant did not alter his prescription practices. Nine of defendant's patients died of drug overdoses from December 2006 through June 2010: one in 2006, one in 2007, two in 2008, two in 2009, and three in 2010. The average age of these patients at death was 41 years, with the youngest being 20 years, and the oldest being 55 years.

## Controlled Substances

6. The Controlled Substances Act prohibits the distribution and dispensing of various listed drugs, including drugs that are prescribed lawfully for legitimate medical purposes by physicians and other licensed health care providers. Licensed health care providers may distribute and dispense controlled substances if they have a DEA Registration Number, and if they comply with all DEA regulations and all applicable federal laws.

7. Federal law provides that licensed health care professionals may only issue a prescription for a controlled substance if they are doing so in the usual course of professional practice and for a legitimate medical purpose. Therefore, health care providers that prescribe controlled drugs outside the usual course of professional practice and not for a legitimate medical purpose are violating the Controlled Substances Act and illegally distributing and dispensing drugs. For example, a prescription is not for a legitimate purpose and is not within

2

the usual course of professional practice if the health care provider who issues the prescription knows that the person to whom it is issued is abusing or diverting the controlled substance.

8.  **VIWATHNA BHUTHIMETHEE** distributed, dispensed, and caused to be distributed and dispensed, without a legitimate medical purpose and outside the usual course of professional medical practice, the following types of controlled substances:

   (a)  **Schedule 3 drugs**, that is, drugs having a potential for abuse less than the drugs in Schedule 2, but drugs which, if abused, may lead to moderate or low physical dependence or high psychological dependence, in particular, Hydrocodone (brand names Norco, Lorcet, Lortab and Vicodin).

   (b)  **Schedule 4 drugs**, that is, drugs with a low potential for abuse relative to the drugs in Schedule 3, but drugs which, if abused, may lead to limited physical dependence or psychological dependence, in particular, Alprazolam (brand name Xanax).

9.  Some controlled narcotic drugs can be used for pain relief and can be short-acting or long-acting. Short-acting narcotics (e.g., Hydrocodone) have a higher chance of addiction than long-acting narcotics (e.g., Morphine, Methadone). Additionally, a combination of short-acting narcotics and short-acting benzodiazepines (e.g., Xanax) has a higher propensity for addiction.

10.  In addition to narcotics and benzodiazepines, other prescribed drugs, even though not "controlled substances," can cause dependence. An example is Carisoprodol, commonly known as Soma, which is a muscle relaxant used to relieve pain.

11.  Prescribed drugs can be misused or abused. Misuse is the unintentional inappropriate use of a medication, either due to a misunderstanding of directions or because

3

of a confused state. Abuse is the intentional inappropriate use of a medication, either by overusing the medication or by taking it for a purpose not prescribed.

## Pain Management

12. Chronic pain can be a debilitating condition. Patients with chronic pain are entitled to receive appropriate medical care to relieve their pain, including the prescription of controlled drugs. Pain Management is a recognized specialty involving the treatment of chronic pain. The goal of Pain Management is to decrease or control pain, while maintaining or increasing a patient's ability to function and the patient's quality of life.

13. Although it is lawful for a physician to prescribe controlled drugs to a person suffering from chronic pain, the physician must still issue the prescription for a legitimate medical purpose and within the usual course of professional practice. A prescription for controlled drugs is illegal when a provider issues the prescription while knowing that the person to whom it is issued is abusing or diverting the controlled drugs.

14. It is a fundamental precept of medicine that a health care provider should "first do no harm" and should provide honest services to a patient, as opposed to providing services driven by a desire to enhance the provider's income. The treatment should not result in greater risks to the patient than the condition being treated, especially if the risks of treatment are life-threatening, and the underlying condition is not.

15. If a provider makes a patient worse, and the provider does not change the course of treatment, the provider is not practicing legitimate medicine and is not acting in the usual course of professional practice.

4

16.     One of the most important risks of the long-term prescribing of controlled drugs for chronic pain is the development of an addiction problem, or the worsening of a previous addiction problem.  Risks of addiction increase if the patient has a psychiatric history, or a non-opiate addiction history.  Risks of addiction also significantly increase if the patient has a current or historical addiction to cocaine or opiates.  Addiction or addictive behavior is a strong indication to cease prescribing controlled drugs, even if there is an otherwise legitimate medical purpose for the prescriptions.

17.     Continuing to prescribe controlled drugs to a patient who is demonstrating aberrant behavior is doing harm to the patient.  If this situation continues, it indicates that the prescribing physician is acting for other than a legitimate medical purpose and outside the usual course of professional practice.

18.     To prevent addiction to, and abuse and diversion of, the controlled drugs prescribed, health care providers look for recognized "red flags" that may indicate a patient may be abusing or diverting the prescribed drugs. These red flags include:

(a)     requests for early refills;

(b)     specific requests for particular drugs;

(c)     claims that certain drugs do not help pain;

(d)     a reluctance to change medications;

(e)     drug screens showing the presence of controlled drugs the provider did not prescribe, or the presence of illegal controlled drugs, or failing to show all of the controlled drugs prescribed;

(f)     claims that drugs were lost, stolen or destroyed;

(g) tips regarding a patient's abuse or diversion of the drugs; and

(h) obtaining controlled drugs from multiple providers ("doctor shopping");

### The Scheme to Defraud

19. **VIWATHNA BHUTHIMETHEE** devised a scheme to defraud healthcare benefit programs of money by distributing and dispensing controlled drugs illegally. In so doing, **VIWATHNA BHUTHIMETHEE** caused materially false and fraudulent claims to be made to healthcare benefit programs, in particular Illinois Medicaid, which paid for some of the illegally prescribed drugs.

20. During the course and in furtherance of the scheme, **VIWATHNA BHUTHIMETHEE** prescribed controlled drugs and non-controlled drugs to patients, which were not for a legitimate medical purpose, and were not within the usual course of professional practice, as evidenced by **BHUTHIMETHEE**:

    (a) indiscriminately prescribing:

        (1) controlled drugs in excessive amounts;

        (2) redundant controlled drugs; and

        (3) redundant combinations of controlled drugs and non-controlled, but addictive, drugs;

    (b) prescribing controlled drugs that a patient requested;

    (c) continuing to prescribe controlled drugs in spite of patients' deteriorating conditions, contraindications, and obvious signs of abuse, including:

        (1) multiple "red flags";

        (2) failed urine drug screens;

    (3)  violations of Opioid Medication Agreements;

    (4)  contacts from family members reporting abuse and addiction; and

    (5)  contacts from pharmacists and physicians regarding abuse and addiction;

(d) prescribing controlled drugs in a way that was likely to cause and did cause dependence and addiction or that worsened existing addictions, including:

    (1)  long-term prescribing of short-acting analgesics (Hydrocodone), often in combination with benzodiazepines (Xanax);

    (2)  prescribing combinations of drugs that were known to have heroin-like effects, including the combination of Lortab, Xanax, and Soma, a preferred prescription combination for drug abusers;

(e) failing to treat the causes of patients' pain or other disease conditions;

(f) failing to monitor or use objective treatment information, including:

    (1)  failing to obtain urine drug screens on a consistent and timely basis;

    (2)  disregarding results of urine drug screens;

    (3)  failing to document the existence and/or significance of objective test results;

(g) failing to prevent diversion of controlled drugs amongst and between patients at the Walk In Clinic;

(h) failing to monitor for toxic levels of Acetaminaphen in the drugs prescribed; and

    (i)  continuing to prescribe drugs in the same manner, despite notice that the Walk In Clinic's prescription practices resulted in:

      (1)  increased scrutiny by Health Care Benefit Programs;

      (2)  obvious drug-seeking behavior and addiction;

      (3)  numerous patient drug overdoses; and

      (4)  numerous patient drug overdose deaths.

21. During the course and in furtherance of scheme, **VIWATHNA BHUTHIMETHEE** caused Health Care Benefit Programs, in particular Illinois Medicaid, to pay for illegal prescriptions.

22. During the course and in furtherance of the scheme, **VIWATHNA BHUTHIMETHEE** operated the Clinic to maximize his personal profit in the following ways:

  (a) **BHUTHIMETHEE** prescribed controlled drugs and other drugs at such dosage frequencies, in such amounts, and in such combinations, as were likely to cause and that did cause patients to become dependent on those drugs, and to become dependent on the Walk In Clinic for providing prescriptions for those drugs, necessitating the patients return to the Clinic for paid office visits to obtain the prescriptions.

  (b) **BHUTHIMETHEE** required patients to return to the Walk In Clinic at least monthly for office visits to obtain prescription refills. Defendant did not authorize refills on most prescriptions, even though the Drug Enforcement Administration does allow for up to 5 re-fills over a six month period on Schedule III and IV controlled substances.

8

(c) **BHUTHIMETHEE**, a Medicaid provider, refused to accept Medicaid payments for most office visits but instead required Medicaid recipients to pay $55 to $60 in cash for all office visits. **BHUTHIMETHEE** was aware that the patients were using Medicaid to pay for the prescribed controlled substance prescriptions.

23. During the course and in furtherance of the scheme, **VIWATHNA BHUTHIMETHEE** operated a high volume Pill Mill. For example, from August 4, 2009 through July 12, 2010 (Monday through Saturday), **BHUTHIMETHEE** saw an average of 25 or more patients per day. For these dates of service, 85% of the patients received a least one prescription for a controlled substance. Patients who went to the Walk In Clinic have described an overwhelming and chaotic environment. The large number of patients waiting to see **BHUTHIMETHEE** resulted in patients having to wait for hours at the Walk In Clinic. One patient reported waiting 14 hours to see **BHUTHIMETHEE** the day he returned from vacation. Some patients farther back in line would try to buy their way to the front of the line. Also some patients in line would buy and sell controlled substances to other patients while they waited in line.

24. During the course and in furtherance of the scheme, **VIWATHNA BHUTHIMETHEE** received from drug seeking patients cash payments for office visits totaling several hundred thousand dollars a year.

25. During the course and in furtherance of the scheme, defendant **VIWATHNA BHUTHIMETHEE** committed in the Southern District of Illinois the following acts, among others:

(a) From in or around 2006 through May 29, 2008, **VIWATHNA**

9

**BHUTHIMETHEE** prescribed controlled substances and other drugs to Deborah C, who presented to area Emergency Rooms with symptoms of overdose on four occasions. Following each of the overdoses, Deborah C returned to **VIWATHNA BHUTHIMETHEE** who continued to prescribe controlled substances and other drugs, as summarized in the following table:

| Name | Drug Overdose | Date of 1st Walk In Clinic visit with prescription after Overdose | Number of Walk In Clinic visits with prescriptions after Overdose |
|---|---|---|---|
| Deborah C | 06/27/2007 | 07/09/2007 | 14 |
| Deborah C | 12/07/2007 | 12/20/2007 | 3 |
| Deborah C | 01/03/2008 | 01/11/2008 | 5 |
| Deborah C | 03/03/2008 | 03/12/2008 | 6 |

(b)     **VIWATHNA BHUTHIMETHEE** prescribed controlled substances and other drugs to nine persons who eventually died from drug overdose, as summarized in the following table:.

| Name | Age at Death | Walk In Clinic 1st Visit | Walk In Clinic Last Visit | Date of Death |
|---|---|---|---|---|
| Bobbie S | 20 | Oct. 13, 2006 | Dec. 14, 2006 | Dec. 18, 2006 |
| Janice K | 42 | March 1, 2006 | Jan 25, 2007 | March 26, 2007 |
| Deborah C | 45 | Jan 22, 2001 | May 29, 2008 | May 31, 2008 |
| Charles H | 32 | July 16, 2007 | May 29, 2008 | June 22, 2008 |
| Monica F | 41 | Nov. 12, 2004 | April 4, 2009 | April 15, 2009 |
| Kathleen H | 54 | July 24, 2007 | Oct. 19, 2009 | Oct. 21, 2009 |
| John H | 55 | May 20, 2009 | Jan. 15, 2010 | Jan. 31, 2010 |
| William T | 33 | Aug. 15, 2009 | March 1, 2010 | March 2, 2010 |
| Myrtle B | 52 | Jan. 30, 2009 | June 18, 2010 | June 24, 2010 |

For three individuals (Deborah C, Charles H, and Kathleen H), polypharmacy overdose was the cause of death. For two individuals (Myrtle B and Bobbie S), Hydrocodone overdose was the cause of death. For one individual (William T), Hydrocodone, Ethanol and Tramadol overdose was the cause of death. For three individuals (Monica F, John H, and Janice K), Methadone overdose was the cause of death. Despite having over time notice of the overdoses and deaths from several sources, including the Madison County Coroner's Office, hospitals, and family members of the deceased, **VIWATHNA BHUTHIMETHEE** failed to change his prescribing practices, with a consequence of such failure being continuing overdoses and overdose deaths.

26. Beginning in or around 2006 and continuing through on or about July 13, 2010, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE**,

defendant herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Illinois Medicaid, in connection with the delivery of and payment for healthcare benefits and services, by prescribing controlled substances to Medicaid beneficiaries outside the scope of professional practice and not for a legitimate medical purpose and thereby causing false claim submissions for the filling of such prescriptions to the Illinois Medicaid Program, all in violation of Title 18, United States Code, Section 1347.

## COUNT 2
### Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone

On or about January 11, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE**,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Deborah C twenty (20) Norco 7.5/325 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 3
### Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone

On or about January 14, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE**,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Deborah C sixty (60) Norco 7.5/325 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 4
**Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone**

On or about January 28, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE,**

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Deborah C sixty (60) Norco 7.5/325 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 5
**Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone**

On or about February 14, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE,**

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Deborah C sixty (60) Norco 7.5/325 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 6
**Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone**

On or about February 27, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE,**

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Deborah C forty-five (45) Norco 7.5/325 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 7
**Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone**

On or about July 5, 2008, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE,**

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Monica F sixty (60) Lorcet 10/650 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

### COUNT 8
### Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone

On or about July 19, 2008, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Monica F sixty (60) Lorcet 10/650 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

### COUNT 9
### Illegal Dispensation of Schedule III Controlled Substance - Hydrocodone

On or about August 1, 2008, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule III controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Monica F one hundred twenty (120) Lorcet 10/650 pills, each containing Hydrocodone, a Schedule III controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNT 10
## Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about November 24, 2009, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Sarah W fifty-six (56) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

## COUNT 11
## Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about December 22, 2009, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Sarah W fifty-six (56) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

### COUNT 12
### Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about January 19, 2010, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE**,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Sarah W sixty (60) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

### COUNT 13
### Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about May 3, 2010, in Madison County, within the Southern District of Illinois,

**VIWATHNA BHUTHIMETHEE**,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Michelle W ninety (90) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

## COUNT 14
### Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about May 29, 2010, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Michelle W ninety (90) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

## COUNT 15
### Illegal Dispensation of Schedule IV Controlled Substance - Alprazolam

On or about June 30, 2010, in Madison County, within the Southern District of Illinois,

### VIWATHNA BHUTHIMETHEE,

defendant herein, while a Drug Enforcement Administration registrant physician authorized to prescribe and dispense Schedule IV controlled substances when acting within the usual course of professional practice and for a legitimate medical purpose, did knowingly and intentionally cause to be dispensed to his patient Michelle W ninety (90) Xanax 0.5 milligram pills, each containing Alprazolam, a Schedule IV controlled substance, and did so acting outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(2).

STEPHEN R. WIGGINTON
United States Attorney

MICHAEL J. QUINLEY
Assistant United States Attorney

Recommended Bond: $100,000 secured